# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LISA D. CUNNINGHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 12-2261-JWL |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision of the Commissioner.

## I. Background

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD and SSI, alleging disability beginning January 10, 2008. (R. 10, 132-45). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She alleges that the Administrative Law Judge (ALJ) erred in evaluating the weight accorded to the treating source opinion of Dr. Romito and in determining the credibility of Plaintiff's allegations of symptoms, and that substantial record evidence does not support the residual functional capacity (RFC) assessed by the ALJ or the limitations presented in the ALJ's hypothetical question to the vocational expert. The court finds no error as alleged by Plaintiff.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.     Evaluation of the Treating Source Opinion

The ALJ noted that Dr. Romito had completed an RFC form in February 2011 opining that Plaintiff has limitations which, if accepted, would preclude substantial gainful work activity. (R. 13). He explained that he accorded "little weight" to Dr. Romito's opinion because Dr. Romito had not treated Plaintiff since November 2008, and because although Dr. Romito had opined regarding mental limitations for Plaintiff, he is not a mental health specialist. (R. 14-15).

Plaintiff asserts that both reasons given to discount Dr. Romito's opinion are insufficient. She points out that Dr. Romito began treating Plaintiff in November 2007, and argues that since he is a treating source it was error not to accord controlling weight to his opinion or at least to weigh it deferentially. With regard to the first reason given, Plaintiff acknowledges that "Dr. Romito had not treated Ms. Cunningham for three years prior to the hearing," and argues that due to the degenerative nature of her condition, if she had certain limitations in 2008 as opined by Dr. Romito, her condition no doubt

4

would have been worse in 2011. (Pl. Br. 13-14). Plaintiff's argument misses the point of the ALJ's reasoning. The ALJ did not discount Dr. Romito's opinion because he had not treated Plaintiff for three years prior to the hearing. Rather, he discounted the opinion because it was produced by Dr. Romito in February 2011 even though the doctor had not seen Plaintiff since November 2008. Thus, the physician's opinion was based upon his recollections of Plaintiff's treatment more than two years earlier, relying only upon two-year-old recollections refreshed merely by a review of his earlier treatment notes. The ALJ's concern was not with whether Plaintiff's condition might have deteriorated since 2008, but rather he was concerned that Dr. Romito's opinion, produced in February 2011, was not an accurate portrayal of his actual opinion more than two years earlier when he last treated Plaintiff in November 2008. This is a legitimate reason to discount the physician's opinion.

Plaintiff also argues it was error to discount Dr. Romito's opinion regarding the effects of pain on Plaintiff's attention and concentration merely because he is not a mental health specialist. (Pl. Br. 14). She points out that Dr. Romito has the education and experience to opine regarding his patient's pain level, and argues that if the logic used by the ALJ here is allowed, only a mental health provider would be allowed to give an opinion regarding the effects of pain on attention or concentration. (Pl. Br. 14-15). While it is true that any physician has the expertise to opine regarding the effects of pain on concentration and focus, and that such an opinion may not be disregarded merely because it was not provided by a mental health specialist, that is not what happened here.

5

Plaintiff acknowledges regulatory and case law factors which have been recognized for use in evaluating the weight accorded to medical opinions. Id. at 15 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004); and 20 C.F.R. § 404.1527(d)). One of those factors as cited by Plaintiff is "specialization of the treating source." Id. Here, the ALJ used the fact that Dr. Romito is not a mental health specialist (specialization of the treating source) as a factor to discount the physician's opinion. However, that was not the sole reason to discount Dr. Romito's opinion. This is not error. Moreover, in context the ALJ found Plaintiff's allegations regarding symptoms (including her allegation that pain prevents her from attending and concentrating) are not credible, and that is a finding which supports his determination that Dr. Romito's opinion regarding attention and concentration should be discounted.

In her final argument regarding Dr. Romito's medical opinion, Plaintiff argues that it is unknown how the regulatory factors were used in weighing the opinion, and that constitutes reversible error. (Pl. Br. 15-16). As Plaintiff's argument suggests, if a treating source opinion is not given controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Watkins, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

As the analysis above reveals, although the ALJ did not perform a factor-by-factor analysis, he considered the regulatory factors in weighing Dr. Romito's medical opinion. At the least he considered the nature and extent of Dr. Romito's treatment relationship, the length of the treatment, and the length of time after the relationship ended before Dr. Romito provided an opinion to the agency regarding Plaintiff's limitations. (R. 12-13). He also specifically considered the degree to which the opinion was consistent with the record as a whole (the credibility analysis and the state agency physician opinions), and the specialization of Dr. Romito when considering the weight to be accorded to the opinion. (R. 14-15). The ALJ met the standard presented in Oldham and Watkins because the decision is sufficiently specific to make clear to the court the weight the ALJ

7

gave to the treating source's medical opinion and the reasons for that weight. More is not required.

## III.     The Credibility Determination

Plaintiff claims the ALJ erred in assessing the credibility of Plaintiff's allegations of symptoms resulting from her impairments. She argues that the ALJ did not consider her good work history in support of her credibility, and erroneously failed to apply the Frey test before using her failure to seek treatment after November 2008 or to seek prescription pain medications as factors to discount her credibility. (Pl. Br. 19-20) (citing Frey v. Bowen, 816 F.2d 508, 516-17(10th Cir. 1987)). Finally, she argues that the ALJ failed to explain how Plaintiff's daily activities "undercut" her allegations of pain. Id. at 20. The Commissioner argues that the ALJ provided a proper credibility analysis, notes the reasons given by the ALJ to discount the credibility of Plaintiff's allegations, and explains how, in her view, the record evidence supports the credibility determination. (Comm'r Br. 4-11). She argues that the Frey test is not applicable in the circumstances of this case because the ALJ was not relying upon Plaintiff's alleged failure or refusal to follow prescribed treatment, but was merely considering how Plaintiff's lack of treatment and use of only over-the-counter pain medications reflect on her lack of attempts to relieve her allegedly disabling symptoms. (Comm'r Br. 7-8). The court agrees with the Commissioner, and finds no error in the ALJ's credibility determination.

### A.     **The ALJ's Credibility Determination**

In his RFC assessment, the ALJ cited and explained the standard he applied to evaluate the credibility of Plaintiff's allegations, discussed Plaintiff's allegations of disabling symptoms, and explained why he found those allegations are not credible. (R. 13-14). He provided six reasons for discounting Plaintiff's allegations: (1) Plaintiff had not sought treatment for her knees for over two years since November 2008. (2) Plaintiff only takes over-the-counter medications for pain. (3) The objective medical findings do not support the severe limitations alleged. (4) Plaintiff's use of a cane or knee braces in certain situations were not prescribed by a physician. (5) Plaintiff's daily activities ("especially her ability to work part time and care for her grandchildren") do not support her allegations of disabling symptoms. (R. 14).

### B.     Analysis

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

9

findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

As Plaintiff's briefs suggest, the courts have recognized a non-exhaustive list of factors which should be considered when evaluating the credibility of a claimant's allegations of symptoms:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489). Moreover, the Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

The ALJ's credibility analysis reveals that he considered these factors. While Plaintiff is correct that "a good work record" suggests that Plaintiff has been willing to work in the past, and therefore lends some support to her allegation that she is not

working now because she is unable to do so, she has not shown that the ALJ's failure to state that he had considered her work history constitutes error in his credibility determination. As when considering the regulatory factors for evaluating medical opinions, when evaluating a claimant's credibility, an ALJ "need not make a 'formalistic factor-by-factor recitation of the evidence,'" so long as he "'sets forth the specific evidence he relies on.'" Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012) (quoting Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)). Plaintiff's appeal to her "good work record" is merely an attempt to get the court to reweigh the evidence and substitute its judgment for that of the Commissioner. That it may not do. The mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and bracket omitted). Therefore, where, as here, the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

Moreover, the court finds that the Frey test is not required in the circumstances of this case. As Plaintiff's Brief suggests, the court in Frey stated a test which should be

11

applied by an ALJ in situations where a claimant has refused to follow or failed to undertake treatment recommended by her physician. "In reviewing the impact of a claimant's failure to undertake treatment, . . . [the court] consider[s] four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." Frey, 816 F.2d at 517. But, as the Commissioner's Brief suggests, the Tenth Circuit has also recognized that the Frey test should not be applied in those situations where treatment has not been prescribed, but where the ALJ is merely considering "what attempts plaintiff made to relieve h[er] pain-- including whether [s]he took pain medication--in an effort to evaluate the veracity of plaintiff's contention that h[er] pain was so severe as to be disabling." Qualls, 206 F.3d at 1372. Here, the ALJ noted that Plaintiff had sought no medical treatment for her knees in more than two years, and that "[s]he only takes over-the-counter medications for pain." (R. 14). There can be no doubt that the ALJ was focused on the fact that Plaintiff had not made significant attempts to relieve her pain through medical treatment or by seeking more powerful medications. Therefore, the rationale of Qualls applies, and there is no need to apply the Frey test in this case.

Finally, Plaintiff's argument that the ALJ failed to explain how her daily activities of making her bed, sweeping, shopping, cooking, reading, and doing laundry "undercut" her allegations of pain is without merit. As Plaintiff's argument suggests, the ALJ did not name each of the activities mentioned by Plaintiff and state how that activity precludes a

12

finding of disability. However, Plaintiff's argument misses the point that an ALJ's decision must be based on all of the record evidence considered together, and misses the ALJ's specific explanation of his consideration of Plaintiff's daily activities. In the decision, the ALJ discussed each of Plaintiff's daily activities, including the activities listed by Plaintiff and then he stated, "These activities, especially her ability to work part time and care for her grandchildren, indicates [sic] that she is more physically capable than alleged, which lessens her credibility." (R. 14). The ALJ considered all of Plaintiff's daily activities together and explained that as a whole those activities suggest she is more physically capable than alleged and thereby "undercut" the credibility of her allegations. This is not error. Plaintiff points to no error in the credibility determination.

## IV. The Residual Functional Capacity Assessment

Plaintiff's allegations of error in the ALJ's RFC assessment and in the hypothetical question propounded to the vocational expert are based exclusively on Dr. Romito's opinion and Plaintiff's testimony. (Pl. Br. 16-18). However, the ALJ found that Plaintiff's testimony is not credible and that Dr. Romito's opinion is worthy of only little weight. Although Plaintiff alleges that these findings are erroneous, the court has found no error in the ALJ's credibility finding or the evaluation of the medical opinion. Consequently, Plaintiff can show no error in the RFC assessed or in the hypothetical question propounded to the vocational expert. Having found no error, the court affirms the decision of the Commissioner.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision of the Commissioner.

Dated this 23rd day of October 2013, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**